UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEATAMIKO REA SMITH,

    *Plaintiff*,

v.                                              CASE NO. 12-CV-14041

COMMISSIONER OF                    DISTRICT JUDGE DENISE PAGE HOOD
SOCIAL SECURITY,                     MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

**I.**     **RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence does not support the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **GRANTED**, that Defendant's Motion for Summary Judgment be **DENIED**, that the findings of the Commissioner be **REVERSED** and the case **REMANDED** for further proceedings under sentence four of 42 U.S.C. § 405(g) .

**II.**     **REPORT**

    **A.**     **Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for Supplemental Security Income ("SSI")

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 9, 12.)

Plaintiff Leatamiko Rea Smith was 38 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 7 at 29, 103.) Plaintiff's employment history includes work as a general laborer for less than one year at a time for three years, as a janitor for one year and as a factory worker for less than one year. (Tr. at 1179.) Plaintiff filed the instant claim on July 15, 2008, alleging that she became unable to work on September 20, 2006. (Tr. at 103.) The claim was denied at the initial administrative stages. (Tr. at 54.) In denying Plaintiff's claims, the Commissioner considered disorders of back, discogenic and degenerative, and affective disorders as possible bases for disability. (*Id.*) On September 8, 2010, Plaintiff appeared before Administrative Law Judge ("ALJ") Janice Bruning, who considered the application for benefits *de novo*. (Tr. at 12-28, 29-51.) In a decision dated April 7, 2011, the ALJ found that Plaintiff was not disabled. (Tr. at 24.) Plaintiff requested a review of this decision on May 10, 2011. (Tr. at 10-11.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on July 14, 2012, when, after review of additional exhibits[2] (Tr. at 546-49), the Appeals Council denied Plaintiff's request for review. (Tr. at 1-6.) On September 12, 2012, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

### B. Standard of Review

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S.

---

[2]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

3

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

Judicial review of the ALJ's decision is direct, "but we play an 'extremely limited' role." *Simila v. Astrue,* 573 F.3d 503, 513-14 (7th Cir. 2009). "We do not actually review whether [the claimant] is disabled, but whether the Secretary's finding of not disabled is supported by substantial evidence." *Lee v. Sullivan*, 988 F.2d 789, 792 (7th Cir. 1993). Just as "'[n]o trial is perfect,'. . . no administrative hearing or opinion is either[;] thus, in analyzing an ALJ's decision,

4

a reviewing court is to look for 'fatal gaps or contradictions' and not 'nitpick' in search of essentially meaningless missteps." *Masters v. Astrue*, 818 F. Supp. 2d 1054, 1965 (N.D. Ill. 2011).

### C. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits ("DIB") program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.    ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since July 15, 2008, the application date. (Tr. at 17.) At step two, the ALJ found that Plaintiff's status post cervical diskectomy in March 2008, moderate disc bulging lumbar spine, and depression were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 18-19.) At step four, the ALJ found that Plaintiff has no past relevant work. (Tr. at 22.) The ALJ also found that Plaintiff was a younger individual on the date the application was filed, i.e., between the ages of 18 and 44. (*Id.*) At step five, the ALJ found that Plaintiff could perform a limited range of sedentary work. (Tr. at 19-22.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 23-24.)

### E.     Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff sought treatment in the emergency room at St. John's Hospital in Detroit, Michigan, on March 11, 2008, for weakness in her right arm. (Tr. at 274-77.) A history of depression was noted. (Tr. at 276.) A CT scan of Plaintiff's brain taken that day because of "cephalgia" showed "no intracranial hemorrhage or hydrocephalus or shifting of the ventricles." (Tr. at 280.) An MRI of the brain taken that same day showed no distinct white matter. (Tr. at 283.)

Plaintiff was treated by Barry Braver, D.O., in July 2008 for cervical spine issues, including a cervical discectomy and fusion at C5-C6. (Tr. at 201-06, 349-445.)

Plaintiff also underwent a psychiatric consultation on July 2, 2009, based on stress and depression. (Tr. at 382.) Plaintiff was diagnosed with major depressive disorder, severe with psychotic features, panic disorder without agoraphobia, R/O schizophrenia, undifferentiated type, and R/O schizoaffective disorder. (Tr. at 384.) Plaintiff was assessed a GAF score of 40. (*Id.*)

A Psychiatric Review Technique was completed by Kokila Sheth, M.D., on November 12, 2008. (Tr. at 296-309.) Dr. Sheth diagnosed affective disorders, i.e., depressive syndrome characterized by sleep disturbance, psychomotor agitation or retardation, decreased energy, feelings of guilt or worthlessness, and difficulty concentrating or thinking. (Tr. at 296, 299.) Plaintiff was found to be moderately limited in activities of daily living, maintaining social functioning, and in maintaining concentration, persistence or pace. (Tr. at 306.) A Mental Residual Functional Capacity ("RFC") Assessment was completed on the same day by Dr. Sheth. (Tr. at 310-13.) A Physical RFC Assessment and Medical Evaluation/Case Analysis were completed on December 22, 2008, by Delois Daniels, M.D. (Tr. at 340-48.)

An MRI of Plaintiff's brain taken on May 5, 2010, showed "[m]idline structures demonstrate partially empty sella. Corpus callosum demonstrates normal morphology." (Tr. at 538.) All other assessments were normal or unremarkable. (*Id.*) An MRI of Plaintiff's lumbar spine taken on September 1, 2010, was normal. (Tr. at 543.)

### F. Analysis and Conclusions

#### 1. Legal Standards

The ALJ found that Plaintiff could perform a limited range of sedentary work. (Tr. at 19-22.) Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a)(1991). Social Security Ruling 83-10 clarifies this definition:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

S.S.R. 83-10.

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

#### 2. Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 9.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that the ALJ failed in her duty to develop a full and fair record where Plaintiff was not represented by counsel and has psychiatric issues that prevented her assistance in gathering and submitting records (Doc. 9 at 11-15), that the ALJ did not fairly

8

assess Plaintiff's credibility and failed to consider nonexertional limitations when formulating the RFC (*id.* at 15-17), and that a remand under sentence six of 42 U.S.C. § 405(g) is necessary to obtain a complete medical record. (*Id.* at 17-18.)

### a. Full and Fair Record

The "burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) (citing 20 C.F.R. §§ 416.912, 416.913(d)). "Only under special circumstances, when a claimant is without counsel, not capable of presenting an effective case, and unfamiliar with hearing procedures does the ALJ have a special duty to develop the record." *Rise v. Apfel, Comm'r of Soc. Sec.*, No. 99-6164, 2000 WL 1562846, at *2 (6th Cir. 2000) (citing *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983)).

"Where a claimant seeking judicial review argues that the ALJ failed to fully and fairly develop the record, a court will remand only if the claimant can demonstrate that [she] was prejudiced . . . . To establish prejudice, the claimant must point to specific facts that the ALJ did not consider and show that those facts would have been relevant to the ALJ's determination." *Czibor v. Astrue*, No. 12C 1678, 2012 WL 4361554, at *7 (N.D. Ill. Sept. 20, 2012) (citing *Nelms v. Astrue*, 553 F.3d 1039, 1098 (7th Cir. 2008)). Mere conjecture is insufficient. *Binon v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994).

In the instant case, Plaintiff contends that this failure is exacerbated by the fact that Plaintiff suffers from depression coupled with psychotic features, there were no consultative examinations performed, several treating sources were not contacted and thus no records were obtained from them, i.e., Jeffrey Nolan, M.S.W., Kimberly Winston-Matthews, psychiatrist at Henry Ford Hospital, records from Holy Cross Hospital and records from the University Health Center, a Wayne State teaching facility located inside St. John's Hospital. (Doc. 9 at 12-13.) Plaintiff notes that the ALJ attempted to obtain records from the Detroit Receiving Hospital but that Plaintiff was actually treated at the University Health Center. (Doc. 9 at 12.)

9

Defendant argues that the ALJ attempted to obtain records from Holy Cross clinic but there were none available for the dates of service requested. (Doc. 12 at 17.) Defendant also contends that records from St. John's Hospital were included as Exhibit 6F of the administrative record and although "Plaintiff argues that there were additional records from University Health Center located inside of St. John Hospital, [] the record sent from St. John did not include them." (Doc. 12 at 17.) Defendant argues that since these records were from 1990 and Plaintiff's alleged disability date is in 2006, "these omitted reports arguably had little relevance to her condition during the period at issue." (*Id.*) Finally, Defendant argues that Plaintiff has failed to allege what specific information is missing and how that information would have "enhanced a determination of disability[,]" i.e., how Plaintiff was prejudiced. (Doc. 12 at 18.)

I suggest that the ALJ's own discourse with Plaintiff reveals special circumstances giving rise to the ALJ's duty to develop a full and fair record and that Plaintiff was prejudiced by the failure to obtain records regarding her substantial diagnosed mental impairments. After the ALJ introduced herself and explained how the hearing would proceed, the following colloquy took place:

> ALJ: Now I have before me the exhibit file. Is there anything missing from the file that you believe is essential to this case?
>
> CLMT: What am I supposed to do?
>
> ALJ: Is there anything missing from the case?
>
> CLMT: Am I supposed to say something?
>
> HR: You're welcome to talk to her.
>
> CLMT: Okay. No, I've just been going to see my doctors. I have a brain scan today at 1:00.

(Tr. at 31-32.) The ALJ then indicated she would provide Plaintiff with a "couple of sheets" where Plaintiff could give the contact information for her doctors. (Tr. at 32.) I suggest that the above colloquy demonstrates that Plaintiff was not familiar with the hearing process and was not adequately understanding what was happening. *See Rise, supra*.

10

After that, the ALJ administered the oath to Plaintiff and the vocational expert; Plaintiff had to be reminded to put her hand down. The ALJ discussed Plaintiff's right to representation:

> ALJ: ...Now I must ensure for the record that you understand your right to representation. You have the right to be represented by an attorney or non-attorney representative. A representative can help you obtain information regarding your claim, explain medical terms, and explain the proceedings that occur before me. A representative cannot charge or receive a fee unless authorized by the Social Security Administration. There are some legal service organizations that offer representation free of charge if you meet their particular requirements.
> You also have the right to proceed today without a representative and if you do so, I will assist you in obtaining all relevant medical and non-medical records and question you at the hearing. Nevertheless, a representative can help you obtain information regarding your claim and a representative can help you present your case in a way that's most favorable to you. Do you understand your right to representation?
>
> CLMT: Yes.
>
> ALJ: Okay. Now this is the time I can grant you a continuance in order to talk to somebody. If after the hearing you're not fully satisfied what happened [sic] or you're not fully satisfied with the decision, it's too late to say, gee, I wish I had looked into getting a representative. Do you wish me to grant you a continuance for you to talk to somebody about your case?
>
> CLMT: Yes.
>
> ALJ: Have you talked to an attorney or anybody about your case?
>
> CLMT: No.
>
> ALJ: Do you want to talk to somebody about your case?
>
> CLMT: Yes.
>
> ALJ: Okay. What I'm going to do is grant you a continuance. That means you should immediately contact somebody. There's organizations and attorneys who do these cases. They're probably found in your local phonebook. I would do so immediately because we're going to set this case to reschedule. After the hearing right now, I want you to fill out the forms provided to you by the monitor and let her know exactly where these medical records are coming from and we'll try to obtain them for you, all right?
>
> CLMT: Excuse me, I've given you all of my records and I just have a few - - maybe some paperwork from my doctor. I really don't think that there's a - - that I need a lawyer. I don't.
>
> ALJ: Okay. So you wish - - okay, so you wish to have the hearing right now?
>
> CLMT: I can do that.
>
> ALJ: Are you sure?

11

CLMT: Yes.

(Tr. at 33-34.) I suggest that this colloquy does not reveal a knowing and intelligent waiver of the right to representation. "Even if a waiver is not knowing and voluntary, however, a claimant must show that she suffered prejudice because she was unrepresented, 'such as a failure by the ALJ to fully develop the administrative record.'" *Smith v. Comm'r of Soc. Sec.*, No. 1:11-cv-296, 2012 WL 7009808, at *6 (E.D. Tenn. Nov. 6, 2012) (citations omitted). Therefore, I suggest that the waiver issue is properly subsumed by the issue of whether the ALJ failed to fully develop the record and whether Plaintiff was prejudiced by any failure.

Plaintiff was able to answer questions raised by the ALJ as to her impairments. However, after the VE testified, Plaintiff had no questions for the VE. (Tr. at 50.) The ALJ concluded by indicating, "Now if you could provide that information to the monitor, we can obtain those records regarding your most recent MRIs, the one that's occurring today, okay?" (Tr. at 51.) Plaintiff responded, "Okay." (Tr. at 52.) However, there is no evidence that Plaintiff supplied any additional information.

I suggest that the instant case is one presenting those special circumstances where the ALJ was under a duty to fully develop the record because Plaintiff was unfamiliar with the hearing process, did not appear to understand what was happening, was unrepresented, and was not able to present an effective case. *Rise, supra.*

I in addition suggest that this case is also one where Plaintiff was prejudiced by the ALJ's failure to fully develop the record, such that remand is necessary. As to mental impairments, the ALJ's first paragraph of findings focused on Plaintiff's non-compliance with treatment plans at the Eastwood Clinic. (Tr. at 21.) The second paragraph described the psychiatric examination wherein Plaintiff was diagnosed with "Major Depressive Disorder, Severe with Psychotic Features; Panic Disorder without Agoraphobia, R/O Schizophrenia, Undifferentiated Type; and R/O Schizoaffective Disorder." (*Id.*) The ALJ then mentions the opinion of a treating physician who agreed with the diagnoses, Augusto Jamora, M.D., but indicates that "[t]here are no treatment records from this source." (*Id.*) Had treatment records been available, the ALJ could have properly

assessed the treating physician's opinion and given it whatever weight it may be due. *Cole v. Comm'r of Soc. Sec.,* 652 F.3d 653, 660 (6th Cir. 2011). Instead, the ALJ was unable to properly assess the treating physician's opinion. I further suggest that a consultative examination should have been ordered because it was "necessary to enable the administrative law judge to make the disability decision" since the record was not fully developed. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.3d 211, 214 (6th Cir. 1986).

    I also suggest that the lack of evidence as to mental impairments, coupled with the absence of treatment records from a treating source prejudiced the Plaintiff's case. Although Plaintiff was diagnosed with substantial mental impairments that the ALJ found to be severe, I suggest that the lack of medical evidence made it impossible for the ALJ to properly assess the affects those mental impairments have on Plaintiff's RFC. I therefore suggest that the case should be remanded for a new hearing. *See, Jordan v. Comm'r of Soc. Sec.*, No. 10-14786, 2012 WL 86737, at *9-10 (E.D. Mich. Jan. 11, 2012) (where ALJ failed to "inquire further" regarding the plaintiff's schizophrenia diagnosis or the symptoms it was producing and the plaintiff was unrepresented and the ALJ did not fully inquire whether the plaintiff understood that right or was intelligently waving that right, the ALJ failed in his duty to provide a full and fair hearing).

    I further suggest that this result is buttressed by the fact that the ALJ indicated at the conclusion of the hearing that records would be obtained and they were not. (Tr. at 51.) *See Burrows v. Comm'r of Soc. Sec.*, No.12-cv-10109, 2012 WL 5411113, at *10 (E.D. Mich. Sept. 28, 2012) (the ALJ's failure to attempt to obtain records central to the plaintiff's claim and records that the ALJ expressly stated he would obtain for the plaintiff prejudiced the plaintiff's right to a full and fair hearing) (citing *Mejias v. Apfel*, No. 96 Civ. 9680, 1998 WL 651052, at *7 (S.D.N.Y. Sept. 23, 1998) ("The ALJ's failure to obtain the plaintiff's records from her treating sources is particularly significant because, as noted above, he implied at the conclusion of the hearing that he would obtain the records . . . .")).

**b.** **Remand**

Having suggested that the case be remanded for a new hearing, the next question is whether that remand should be under sentence four or sentence six of 42 U.S.C. § 405(g). Generally, remands ordered because the ALJ failed to fully develop the record are made under sentence four. *See, e.g., Jordan*, 2012 WL 86737 at *10; *Vaca v. Comm'r of Soc. Sec.*, No. 1:08-cv-653, 2010 WL 821656, at *7 (W.D. Mich. Mar. 4, 2010). Plaintiff here seeks remand under sentence six. (Doc. 9 at 17-18.)

In *Faucher v. Sect'y of Health & Human Servs.*, 17 F.3d 171 (6th Cir. 1994), the court explained that

> [r]emands under both sentence four and sentence six of § 405(g) can involve the taking of additional evidence. Under sentence six, a district court, before making a final judgment, may order the Secretary to consider additional evidence because a party presents material evidence to the court that was not previously available. Under sentence four, the court makes a final judgment, affirming, reversing, or modifying the Secretary's decision and may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place.

*Id.* at 175[3] ("a remand pursuant to sentence four of § 405(g) is a post-judgment remand," as opposed to a remand "pursuant to sentence six of § 405(g), [which] is a pre-judgment remand"). Since I suggest that remand should be made in the instant case to remedy the defective record, I also suggest that remand under sentence four is most appropriate.

Alternatively, I suggest that remand under sentence six would also be appropriate. Sentence six of 42 U.S.C. § 405(g) allows the district court to remand in light of additional evidence without making any substantive ruling as to the merits of the Commissioner's decision, but only if a claimant can show good cause for failing to present the evidence earlier. *Melkonyan v. Sullivan*, 501 U.S. 89, 100, 111 S. Ct. 2157, 115 L. Ed. 2d 78 (1991). The Sixth Circuit has long recognized that a court may only remand disability benefits cases when a claimant carries his burden to show that "the evidence is 'new' and 'material' and 'good cause' is shown for the failure to present the

---

[3]Other courts have questioned whether a remand under sentence four may include the taking of additional evidence where the requirements of sentence six are not met. *See, e.g., Jones v. Astrue*, 650 F.3d 772, 776 (D.C. Cir. 2011) (collecting cases and noting that the Supreme Court has not ruled on the issue).

14

evidence to the ALJ." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010). Evidence is only "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Id.* (citing *Foster*, 279 F.3d at 353). In addition, "such evidence is 'material' only if there is a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Foster*, 279 F.3d at 357.

"'Good cause' is shown for a sentence-six remand only 'if the new evidence arises from continued medical treatment of the condition, and was not generated merely for the purpose of attempting to prove disability.'" *Payne v. Comm'r of Soc. Sec.*, No. 1:09-cv-1159, 2011 WL 811422, at *12 (W.D. Mich. Feb. 11, 2010) (finding that evidence generated after the hearing and submitted to the Appeals Council for the purpose of attempting to prove disability was not "new").

In the instant case, Plaintiff would like to include the treatment records from the treating source and a consultative or treating source statement regarding Plaintiff's ability to perform work activities. (Doc. 9 at 17.) Since this evidence does not yet exist, it could be considered new, once generated. I further suggest that the evidence would represent ongoing treatment rather than evidence generated merely for the purpose of proving disability and thus, good cause could be shown.

Defendant argues that since there is no proffer regarding what this evidence may show, Plaintiff has not established that this evidence is material. (Doc. 12 at 18.) I suggest that this obstacle is overcome by reference to the analysis under the full and fair record discussion above. If the evidence were not at least potentially material, Plaintiff would not be prejudiced by a failure to more fully develop the record. Since I suggest that the record should be more fully developed and that Plaintiff would be prejudiced by a failure to do so, I correspondingly suggest that the new evidence is material. I therefore suggest that remand under sentence six would also be appropriate should the court find that remand under sentence four is not.

### 3. Conclusion

Since I suggest that the ALJ failed to fully develop the record and that remand under sentence four of 42 U.S.C. § 405(g) is warranted, the additional issues raised by Plaintiff need not be addressed.

## III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

s/ Charles E Binder
CHARLES E. BINDER
Dated: June 5, 2013    United States Magistrate Judge

### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: June 5, 2013    By    s/Patricia T. Morris
Law Clerk to Magistrate Judge Binder

16